Syllabus

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## HINCK ET UX. *v.* UNITED STATES

CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

No. 06–376. Argued April 23, 2007—Decided May 21, 2007

A 1986 amendment to the Internal Revenue Code permits the Treasury Secretary to abate interest that accrues on unpaid federal income taxes if the interest assessment is attributable to Internal Revenue Service (IRS) error or delay. 26 U. S. C. §6404(e)(1). Subsequently, the federal courts uniformly held that the Secretary's decision not to abate was not subject to judicial review. In 1996, Congress added what is now §6404(h), which states that the Tax Court has "jurisdiction over any action brought by a taxpayer who meets the requirements referred to in section 7430(c)(4)(A)(ii) to determine whether the Secretary's failure to abate . . . was an abuse of discretion, and may order an abatement, if such action is brought within 180 days after the date of the mailing of the Secretary's final determination not to abate . . . ." §6404(h)(1). Section 7430(c)(4)(A)(ii) in turn incorporates 28 U. S. C. §2412(d)(2)(B), which refers to individuals with a net worth not exceeding $2 million and businesses with a net worth not exceeding $7 million. The IRS denied petitioner Hincks' request for abatement of interest assessed in 1999 for the period March 21, 1989, to April 1, 1993. The Hincks then filed suit in the Court of Federal Claims seeking review of the refusal to abate. The court granted the Government's motion to dismiss, and the Federal Circuit affirmed, holding that §6404(h) vests exclusive jurisdiction to review interest abatement claims in the Tax Court.

*Held:* The Tax Court provides the exclusive forum for judicial review of a failure to abate interest under §6404(e)(1). This Court's analysis is governed by the well-established principle that, in most contexts, "'a precisely drawn, detailed statute pre-empts more general remedies,'" *EC Term of Years Trust* v. *United States*, 550 U. S. ___, ___; it is also guided by the recognition that when Congress enacts a specific rem-

edy when none was previously recognized, or when previous remedies were "problematic," the remedy provided is generally regarded as exclusive, *Block* v. *North Dakota ex rel. Board of Univ. and School Lands*, 461 U. S. 273, 285. Section 6404(h) fits the bill on both counts. In a single sentence, it provides a forum for adjudication, a limited class of potential plaintiffs, a statute of limitations, a standard of review, and authorization for judicial relief; it was also enacted against a backdrop of decisions uniformly rejecting the possibility of any review of the Secretary's §6404(e)(1) determinations. Though Congress failed explicitly to define the Tax Court's jurisdiction as exclusive, it is quite plain that the terms of §6404(h)—a "precisely drawn, detailed statute" filling a perceived hole in the law—control all requests for review of §6404(e)(1) decisions, including the forum for adjudication. The Hincks correctly argue that Congress's provision of an abuse of discretion standard removed one of the obstacles courts had held foreclosed judicial review of such determinations, but Congress did not simply supply this single missing ingredient in enacting §6404(h). Rather, it set out a carefully circumscribed, time-limited, plaintiff-specific provision, which also precisely defined the appropriate forum. This Court will not isolate one feature of this statute and use it to permit taxpayers to circumvent the other limiting features in the *same* statute, such as a shorter statute of limitations than in general refund suits or a net-worth ceiling for plaintiffs eligible to bring suit. Taxpayers could "effortlessly evade" these specific limitations by bringing interest abatement claims as tax refund actions in the district courts or the Court of Federal Claims, disaggregating a statute Congress plainly envisioned as a package deal. *EC Term of Years Trust*, *supra,* at ___. Equally unavailing are the Hincks' contentions that reading §6404(h) to vest exclusive jurisdiction in the Tax Court impliedly repeals the pre-existing jurisdiction of the district courts and Court of Federal Claims, runs contrary to the structure of tax controversy jurisdiction, and would lead to the "unreasonable" result that taxpayers with net worths exceeding the specified ceilings would be foreclosed from seeking judicial review of §6404(e)(1) refusals to abate. Pp. 6–9.

446 F. 3d 1307, affirmed.

ROBERTS, C. J., delivered the opinion for a unanimous Court.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

No. 06–376

## JOHN F. HINCK, ET UX., PETITIONERS *v.* UNITED STATES

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

[May 21, 2007]

CHIEF JUSTICE ROBERTS delivered the opinion of the Court.

Bad things happen if you fail to pay federal income taxes when due. One of them is that interest accrues on the unpaid amount. Sometimes it takes a while for the Internal Revenue Service (IRS) to determine that taxes should have been paid that were not. Section 6404(e)(1) of the Internal Revenue Code permits the Secretary of the Treasury to abate interest—to forgive it, partially or in whole—if the assessment of interest on a deficiency is attributable to unreasonable error or delay on the part of the IRS. Section 6404(h) allows for judicial review of the Secretary's decision not to grant such relief. The question presented in this case is whether this review may be obtained only in the Tax Court, or may also be secured in the district courts and the Court of Federal Claims. We hold that the Tax Court provides the exclusive forum for judicial review of a refusal to abate interest under §6404(e)(1), and affirm.

I

The Internal Revenue Code provides that if any amount of assessed federal income tax is not paid "on or before the last date prescribed for payment," interest "shall be paid for the period from such last date to the date paid." 26 U. S. C. §6601(a). Section 6404 of the Code authorizes the Secretary of the Treasury to abate any tax or related liability in certain circumstances. As part of the Tax Reform Act of 1986, Congress amended §6404 to add subsection (e)(1), which, as enacted, provided in pertinent part:

> "In the case of any assessment of interest on . . . any deficiency attributable in whole or in part to any error or delay by an officer or employee of the Internal Revenue Service (acting in his official capacity) in performing a ministerial act . . . the Secretary may abate the assessment of all or any part of such interest for any period." 26 U. S. C. §6404(e)(1) (1994 ed.).

In the years following passage of §6404(e)(1), the federal courts uniformly held that the Secretary's decision not to grant an abatement was not subject to judicial review. See, *e.g., Argabright* v. *United States*, 35 F. 3d 472, 476 (CA9 1994); *Selman* v. *United States*, 941 F. 2d 1060, 1064 (CA10 1991); *Horton Homes, Inc.* v. *United States*, 936 F. 2d 548, 554 (CA11 1991); see also *Bax* v. *Commissioner*, 13 F. 3d 54, 58 (CA2 1993). These decisions recognized that §6404(e)(1) gave the Secretary complete discretion to determine whether to abate interest, "neither indicat[ing] that such authority should be used universally nor provid[ing] any basis for distinguishing between the instances in which abatement should and should not be granted." *Selman*, *supra*, at 1063. Any decision by the Secretary was accordingly "committed to agency discretion by law" under the Administrative Procedure Act, 5 U. S. C. §701(a)(2), and thereby insulated from judicial

review. See, *e.g., Webster* v. *Doe*, 486 U. S. 592, 599 (1988); *Heckler* v. *Chaney*, 470 U. S. 821, 830 (1985).

In 1996, as part of the Taxpayer Bill of Rights 2, Congress again amended §6404, adding what is now subsection (h). As relevant, that provision states:

> "Review of denial of request for abatement of interest.—
>
> "(1) In general.—The Tax Court shall have jurisdiction over any action brought by a taxpayer who meets the requirements referred to in section 7430(c)(4)(A)(ii) to determine whether the Secretary's failure to abate interest under this section was an abuse of discretion, and may order an abatement, if such action is brought within 180 days after the date of the mailing of the Secretary's final determination not to abate such interest." 26 U. S. C. §6404(h)(1) (2000 ed., Supp. IV).

Section 7430(c)(4)(A)(ii) in turn incorporates 28 U. S. C. §2412(d)(2)(B), which refers to individuals with a net worth not exceeding $2 million and businesses with a net worth not exceeding $7 million. Congress made subsection (h) effective for all requests for abatement submitted to the IRS after July 30, 1996, regardless of the tax year involved. §302(b), 110 Stat. 1458.[1]

## II

In 1986, petitioner John Hinck was a limited partner in an entity called Agri-Cal Venture Associates (ACVA). Along with his wife, petitioner Pamela Hinck, Hinck filed

---

[1] The Taxpayer Bill of Rights 2 also modified 26 U. S. C. §6404(e)(1)(A) to add the word "unreasonable" before the words "error or delay" and to change "ministerial act" to "ministerial or managerial act." §301(a), 110 Stat. 1457. These changes, however, only apply to interest accruing on deficiencies for tax years beginning after July 30, 1996, see §301(c), *ibid.,* and thus are not implicated in this case.

a joint return for 1986 reporting his share of losses from the partnership. The IRS later examined the tax returns for ACVA and proposed adjustments to deductions that the partnership had claimed for 1984, 1985, and 1986. In 1990, the IRS issued a final notice regarding the partnership's returns, disallowing tens of millions of dollars of deductions. While the partnership sought administrative review of this decision, the Hincks, in May 1996, made an advance remittance of $93,890 to the IRS toward any personal deficiency that might result from a final adjustment of ACVA's returns. In March 1999, the Hincks reached a settlement with the IRS concerning the ACVA partnership adjustments, to the extent they affected the Hincks' return. Shortly thereafter, as a result of the adjustments, the IRS imposed additional liability against the Hincks: $16,409 in tax and $21,669.22 in interest. The IRS applied the Hincks' advance remittance to this amount and refunded them the balance of $55,811.78.

The Hincks filed a claim with the IRS contending that, because of IRS errors and delays, the interest assessed against them for the period from March 21, 1989, to April 1, 1993, should be abated under §6404(e)(1). The IRS denied the request. The Hincks then filed suit in the United States Court of Federal Claims seeking review of the refusal to abate. That court granted the Government's motion to dismiss, 64 Fed. Cl. 71, 81 (2005), and the United States Court of Appeals for the Federal Circuit affirmed, 446 F. 3d 1307, 1313–1314 (2006), holding that §6404(h) vests exclusive jurisdiction to review interest abatement claims under §6404(e)(1) in the Tax Court. Because this decision conflicted with the Fifth Circuit's decision in *Beall* v. *United States*, 336 F. 3d 419, 430 (2003) (holding that §6404(h) grants concurrent rather than exclusive jurisdiction to the Tax Court), we granted certiorari, 549 U. S. ___ (2007).

## III

Our analysis is governed by the well-established principle that, in most contexts, "'a precisely drawn, detailed statute pre-empts more general remedies.'" *EC Term of Years Trust* v. *United States*, 550 U. S. ___, ___ (2007) (slip op., at 4) (quoting *Brown* v. *GSA*, 425 U. S. 820, 834 (1976)); see also *Block* v. *North Dakota ex rel. Board of Univ. and School Lands*, 461 U. S. 273, 284–286 (1983). We are also guided by our past recognition that when Congress enacts a specific remedy when no remedy was previously recognized, or when previous remedies were "problematic," the remedy provided is generally regarded as exclusive. *Id.,* at 285; *Brown*, *supra*, at 826–829.

Section 6404(h) fits the bill on both counts. It is a "precisely drawn, detailed statute" that, in a single sentence, provides a forum for adjudication, a limited class of potential plaintiffs, a statute of limitations, a standard of review, and authorization for judicial relief. And Congress enacted this provision against a backdrop of decisions uniformly rejecting the possibility of any review for taxpayers wishing to challenge the Secretary's §6404(e)(1) determination. Therefore, despite Congress's failure explicitly to define the Tax Court's jurisdiction as exclusive, we think it quite plain that the terms of §6404(h)—a "precisely drawn, detailed statute" filling a perceived hole in the law—control all requests for review of §6404(e)(1) determinations. Those terms include the forum for adjudication.

The Hincks' primary argument against exclusive Tax Court jurisdiction is that by providing a standard of review—abuse of discretion—in §6404(h), Congress eliminated the primary barrier to judicial review that courts had previously recognized; accordingly, they maintain, taxpayers may seek review of §6404(e)(1) determinations under statutes granting jurisdiction to the district courts and the Court of Federal Claims to review tax refund

actions. See 28 U. S. C. §§1346(a)(1), 1491(a)(1); 26 U. S. C. §7422(a). Or, as the Fifth Circuit reasoned: "[T]he federal district courts have always possessed *jurisdiction* over challenges brought to section 6404(e)(1) denials[;] they simply determined that the taxpayers had no *substantive right* whatever to a favorable exercise of the Secretary's discretion . . . . [I]n enacting section 6404(h), Congress indicated that such is no longer the case, and thereby removed any impediment to district court review." *Beall*, *supra*, at 428 (emphasis in original).

It is true that by providing an abuse of discretion standard, Congress removed one of the obstacles courts had held foreclosed judicial review of §6404(e)(1) determinations. See, *e.g., Argabright*, 35 F. 3d, at 476 (noting an absence of "'judicially manageable standards'" (quoting *Heckler*, 470 U. S., at 830)). But in enacting §6404(h), Congress did not simply supply this single missing ingredient; rather, it set out a carefully circumscribed, time-limited, plaintiff-specific provision, which also precisely defined the appropriate forum. We cannot accept the Hincks' invitation to isolate one feature of this "precisely drawn, detailed statute"—the portion specifying a standard of review—and use it to permit taxpayers to circumvent the other limiting features Congress placed in the *same* statute—restrictions such as a shorter statute of limitations than general refund suits, compare §6404(h) (180-day limitations period) with §6532(a)(1) (2-year limitations period), or a net-worth ceiling for plaintiffs eligible to bring suit. Taxpayers could "effortlessly evade" these specific limitations by bringing interest abatement claims as tax refund actions in the district courts or the Court of Federal Claims, disaggregating a statute Congress plainly envisioned as a package deal. *EC Term of Years Trust, supra*, at ___ (slip op., at 5); see also *Block, supra*, at 284–285; *Brown, supra*, 425 U. S., at 832–833.

The Hincks' other contentions are equally unavailing.

First, they claim that reading §6404(h) to vest exclusive jurisdiction in the Tax Court impliedly repeals the preexisting jurisdiction of the district courts and Court of Federal Claims, despite our admonition that "repeals by implication are not favored." *Morton* v. *Mancari*, 417 U. S. 535, 549 (1974) (internal quotation marks omitted). But the implied-repeal doctrine is not applicable here, for when Congress passed §6404(h), §6404(e)(1) had been interpreted not to provide *any* right of review for taxpayers. There is thus no indication of any "language on the statute books that [Congress] wishe[d] to change," *United States* v. *Fausto*, 484 U. S. 439, 453 (1988), implicitly or explicitly. Congress simply prescribed a limited form of review where none had previously been found to exist.

Second, the Hincks assert that vesting jurisdiction over §6404(e)(1) abatement decisions exclusively in the Tax Court runs contrary to the "entire structure of tax controversy jurisdiction," Brief for Petitioners 30, under which the Tax Court generally hears prepayment challenges to tax liability, see §6213(a), while postpayment actions are brought in the district courts or Court of Federal Claims. In a related vein, the Hincks point out that the Government's position would force taxpayers seeking postpayment review of their tax liabilities to separate their §6404(e)(1) abatement claims from their refund claims and bring each in a different court. Even assuming, *arguendo,* that we were inclined to depart from the face of the statute, these arguments are undercut on two fronts. To begin with, by expressly granting to the Tax Court *some* jurisdiction over §6404(e)(1) decisions, Congress has already broken with the general scheme the Hincks identify. No one doubts that an action seeking review of a §6404(e)(1) determination may be maintained in the Tax Court even if the interest has already been paid, see, *e.g., Dadian* v. *Commissioner*, 87 TCM 1344 (2004), ¶2004–121 RIA Memo TC, p. 790–2004; *Miller* v. *Commissioner*, 79 TCM

2213 (2000), ¶2000–195 RIA Memo TC, p. 1120–2000, aff'd, 310 F. 3d 640 (CA9 2002), and the Hincks point to no case where the Tax Court has refused to exercise jurisdiction under such circumstances.

In addition, an interest abatement claim under §6404(e)(1) involves no questions of substantive tax law, but rather is premised on issues of bureaucratic administration (whether, for example, there was "error or delay" in the performance of a "ministerial" act, §6404(e)(1)(A)). Judicial review of decisions not to abate requires an evaluation of the internal processes of the IRS, not the underlying tax liability of the taxpayer. We find nothing tellingly awkward about channeling such discrete and specialized questions of administrative operations to one particular court, even if in some respects it "may not appear to be efficient" as a policy matter to separate refund and interest abatement claims. 446 F. 3d, at 1316.[2]

Last, the Hincks contend that Congress would not have intended to vest jurisdiction exclusively in the Tax Court because it would lead to the "unreasonable" result that taxpayers with net worths greater than $2 million (for individuals) or $7 million (for businesses) would be foreclosed from seeking judicial review of §6404(e)(1) refusals to abate. Brief for Petitioners 46; see also *Beall*, 336 F. 3d, at 430. But we agree with the Federal Circuit that this outcome "was contemplated by Congress." 446 F. 3d, at 1316. The net-worth limitation in §6404(h) reflects Congress's judgment that wealthier taxpayers are more likely to be able to pay a deficiency before contesting it, thereby avoiding accrual of interest during their administrative and legal challenges. In contrast, taxpayers with comparatively fewer resources are more likely to contest their

---

[2] We note that the Hincks sought only interest abatement in the Court of Federal Claims, thus failing to implicate the "claim-splitting" and efficiency concerns they condemn. See Brief for Petitioners 49.

assessed deficiency before first paying it, thus exposing themselves to interest charges if their challenge is ultimately unsuccessful. There is nothing "unreasonable" about Congress's decision to grant the possibility of judicial relief only to those taxpayers most likely to be in need of it.[3]

The judgment of the United States Court of Appeals for the Federal Circuit is affirmed.

*It is so ordered.*

---

[3] The Hincks also argue that the net-worth limitations on §6404(h) review violate the due process rights of those taxpayers who exceed them. The court below did not pass upon this constitutional challenge, nor do we, for as the Hincks concede, the record contains no findings concerning their own net worth, Brief for Petitioners 44, and they offer no reasons to deviate from our general rule that a party "must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties," *Kowalski* v. *Tesmer*, 543 U. S. 125, 129 (2004) (quoting *Warth* v. *Seldin*, 422 U. S. 490, 499 (1975); internal quotation marks omitted).